IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| SUSAN KELCH-DYSON, ) | |
| ) | Civil Action No. 5:21-008-DCR |
| PLAINTIFF ) | |
| ) | |
| v. ) | |
| ) | **FIRST AMENDED COMPLAINT** |
| SEDGWICK CLAIMS MANAGEMENT ) | |
| SERVICES, INC.; ACE AMERICAN ) | **DEMAND FOR JURY TRIAL** |
| INSURANCE COMPANY; and SCOTT ) | |
| MICHEL, ) | |
| ) | |
| DEFENDANTS ) | |

\* \* \* \* \* \* \* \* \* \*

Comes the Plaintiff, Susan Kelch-Dyson ("Plaintiff"), by counsel, and pursuant to Fed. R. Civ. P. 15(a)(1) with no responsive pleading having yet been served, hereby files her First Amended Complaint against Defendants, Sedgwick Claims Management Services, Inc., Ace American Insurance Company, and Scott Michel ("Defendants"), and states upon information and belief as follows:

## **PARTIES**

1. At all times relevant hereto, the Plaintiff was and is a citizen of Kentucky residing in and domiciled in Fayette County, Kentucky.

2. At all relevant times hereto, Defendant Sedgwick Claims Management Services, Inc. ("Sedgwick") was a person, entity, or agent engaged in the business of insurance, authorized to conduct the business of insurance in the Commonwealth of Kentucky.

3. At all relevant times hereto, Defendant Sedgwick was and is a citizen of Tennessee being incorporated in the state of Tennessee and having its principal office located at 8124 Sedgwick Way, Memphis, Tennessee 38125.

4. At all relevant times hereto, Defendant Ace American Insurance Company ("Ace American") was a person, entity, or agent engaged in the business of insurance, authorized to conduct the business of insurance in the Commonwealth of Kentucky.

5. At all relevant times hereto, Defendant Ace American was and is a citizen of Pennsylvania being incorporated in the state of Pennsylvania and having its principal office located at 436 Walnut Street, Philadelphia, PA 19106.

6. At all relevant times hereto, Defendant Scott Michel ("Michel") was a person, entity, or agent engaged in the business of insurance, authorized to conduct the business of insurance in the Commonwealth of Kentucky.

7. Upon information and belief, Defendant Michel was a person, agent, and adjuster adjusting claims for Defendant Sedgwick and Defendant Ace American.

8. At all relevant times hereto, Defendant Michel was and is a citizen of Ohio believed to be residing in and domiciled in Hamilton County, Ohio.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) and § 1367 because there is diversity of citizenship and the amount in controversy exceeds $75,000.

10. Venue is proper because the injuries giving rise to the Complaint took place in Lexington, Fayette County, Kentucky.

## FACTUAL ALLEGATIONS

11. The Plaintiff restates and incorporates by reference the allegations in every paragraph heretofore stated as if fully set out herein.

12. On August 24, 2014, Plaintiff fell at the Kroger located at 1808 Alexandria Drive in Lexington, Kentucky ("Store") as a result of a liquid on the floor that Kroger and its employees failed to clean causing Plaintiff to suffer serious and permanent injuries ("Fall").

13. Liability on the part of Kroger Limited Partnership, I and its manager Sasa Cibula (hereafter "Kroger") was reasonably clear, and they have not asserted any valid or fairly debatable legal or factual defense.

14. The Fall of Plaintiff at the Store was captured on Kroger surveillance video.

15. Prior to the fall, the surveillance video captured Kroger employees moving carts multiple times which contained liquid goods from one area to another crossing over the area directly where Plaintiff ultimately fell.

16. Prior to the Fall, the surveillance video captured Kroger employee Anthony Hoover attempting to clean liquid on the floor at or near where Plaintiff ultimately fell by scooting his feet on the floor with paper towels underneath each foot, in violation of Kroger policies and procedures.

17. Kroger's policies and procedures concerning fall safety policies and procedures after a spill consisted almost entirely of requiring employees to carry and use a pocket spill kit.

18. Kroger employee Anthony Hoover did not even know what a pocket spill kit was and he did not carry them at any time for a period of years.

19. Kroger employee Anthony Hoover admitted in his deposition that if he allowed liquid to remain on the floor on August 24, 2014 that he would have violated Kroger's policies and procedures intended to ensure safety for customers.

20. Kroger employee Anthony Hoover admitted he could not recall specific training on fall prevention provided by Kroger.

21. Kroger employee Anthony Hoover admitted that it would have been safer if he had actually known and followed Kroger's policies and procedures.

22. In the surveillance video of the Fall, Plaintiff can actually be seen injuring herself and sustaining injuries to the exact areas of her body for which she then required substantial medical treatment.

23. Despite clear video evidence identifying the employees in the area where Plaintiff fell, Defendants caused significant undue delay by intentionally delaying the disclosure of the identities of these employees whom Plaintiff sought to depose concerning their involvement.

24. Kroger's incident report from the date of the Fall states that Plaintiff received the injuries which are the basis of this lawsuit.

25. Plaintiff sought emergency medical treatment after the Fall.

26. Plaintiff's initial MRI scans after the Fall demonstrated that Plaintiff's injuries included massive full thickness tears to her body.

27. Defendants refused to offer any sum of Medical Payments coverage ("MedPay") or similar insurance toward Plaintiff's medical expenses.

28. Plaintiff was entitled to receive a sum of MedPay or similar insurance toward her medical expenses.

29. Plaintiff was unable to afford the required surgery for a torn rotator cuff and was forced to continue suffering from this injury as a result of Defendants' significant delay compensating Plaintiff for her injuries.

30. On May 20, 2015, Defendant Sedgwick and Defendant Ace American made an offer to settle in this case, over half a decade ago, offering a total of $6,350 in compensation, as well as a $500 Kroger gift card to fully settle Plaintiff's injury case.

31. Plaintiff's past medical expenses are approximately $300,000.

32. Plaintiff's future medical expenses are approximately $80,000.

33. Plaintiff has thus far undergone surgery as a result of her Fall at the Store.

34. Plaintiff is required to have future surgery as a result of her Fall at the Store.

35. Excluding the $500 Kroger gift card offered, the monetary settlement offer made to Plaintiff of $6,350, which was made on May 20, 2015, was less than the sum of Plaintiff's medical expenses.

36. Excluding the $500 Kroger gift card offered, the monetary settlement offer made to Plaintiff of $6,350, which was made on May 20, 2015, was less than 1% of the sum of Plaintiff's past and future medical expenses.

37. Plaintiff was forced to file a lawsuit on May 29, 2015 to recover sums due her as a result of her injuries from the Fall.

38. On June 3, 2015, on behalf of Defendant Sedgwick and Defendant Ace American, adjuster or agent Scott Michel called to state that he was handling the claim and was inquiring whether a resolution of the case was possible prior to Kroger filing an Answer.

39. Adjuster or agent Defendant Scott Michel is believed to be a claims supervisor or claims manager.

40. On June 3, 2015, adjuster or agent Scott Michel stated that the claims file notes did not even state that Plaintiff had sustained anything more than soft tissues injuries, and he stated that the adjuster or agent's file was devoid of any mention of Plaintiff's torn rotator cuff.

41. Prior to June 3, 2015, Plaintiff had provided a settlement package to Defendant Sedgwick detailing Plaintiff's torn rotator cuff, other injuries, and providing supporting medical records and documentation.

42. Defendant Sedgwick chose to ignore all records demonstrating significant injury to Plaintiff including a torn rotator cuff, and after receiving the file, adjuster or agent Scott Michel refused to review the details of the file.

43. On July 24, 2015, initial counsel for Kroger stated he would not negotiate at all in this case and that if any offer were made, it would come from other individuals involved in the claims process which are believed to include Defendant Sedgwick, Defendant Ace American, and Defendant Michel.

44. After vigorously litigating this case for many years, initial counsel for Kroger withdrew from representation by Agreed Order of Withdrawal and Substitution of Counsel entered March 24, 2020.

45. On June 12, 2018, Plaintiff made a written offer to settle for $900,000, to which Defendants did not respond, and which expired on June 26, 2018.

46. In Plaintiff's Supplemental Answers to Kroger Limited Partnership I's First Interrogatories, Plaintiff itemized damages pursuant to Kentucky Rule of Civil Procedure 8.02 that she would claim at trial in the amount of $13,281,866.86.

47. Defendants' sole expert in the underlying case, Dr. Rick Lyon, did not dispute that Plaintiff fell at Kroger on August 24, 2014.

48. Defendants' sole expert in the underlying case, Dr. Rick Lyon, did not dispute that Plaintiff was injured in the Fall at Kroger on August 24, 2014.

49. Within a reasonable degree of medical probability, Defendants' sole expert in the underlying case, Dr. Rick Lyon, agreed that Plaintiff's rotator cuff tear was either caused by or made symptomatic as a result of the Fall on August 24, 2014.

50. Based on Plaintiff's complaints at the emergency room, the video showing her fall, and the incident report, Dr. Lyon agreed the complaints were more likely than not related to the Fall on August 24, 2014.

51. Plaintiff's expert, Dr. Anthony McEldowney, testified within a reasonable degree of medical probability that all treatment and associated medical bills for Plaintiff's right shoulder injury and left knee injury were related to the August 24, 2014 Fall.

52. The Plaintiff's Fall at the Store occurred over 2300 days ago.

53. Defendants indeed never made any additional offer to settle for many years, instead vigorously litigating the underlying case for nearly half a decade until its initial counsel withdrew from representation on March 24, 2020.

54. At the decision of Defendants, Kroger engaged in voluminous discovery and deposed the Plaintiff for approximately a dozen hours over the course of multiple days in an effort to coerce her into accepting a lesser amount than she was entitled to receive for her injuries.

55. At the decision of Defendants, Kroger refused to take Plaintiff's deposition for a lengthy period.

56. Photographs taken by Kroger Assistant Manager Theodore Irtz in investigating the Fall demonstrated that the floor where Plaintiff fell was wet with liquid.

57. Significant delay in the resolution of Plaintiff's claim was a result of Kroger's refusal to provide proper and complete discovery responses requiring Plaintiff to file motions to compel, at the decision of Defendants.

58. Plaintiff's motions to compel were filed over the course of several years and came before Fayette Circuit Court Judges Goodwine, Clark, Ishmael, and Reynolds.

59. Defendant Sedgwick, Defendant Ace American, and Defendant Michel made clear that they did not review the medical records in this case for an extended period.

60. Liability for payment by Defendant Sedgwick, Defendant Ace American, and Defendant Michel was reasonably clear, and they have not asserted any valid or fairly debatable legal or factual defense.

61. Defendant Michel is an insurance adjuster or agent working for Defendant Sedgwick.

62. Defendant Michel is an insurance adjuster or agent working for Defendant Ace American.

63. Defendants have all filed paperwork with the Kentucky Department of Insurance stating that they are persons, entities, or agents adjusting claims in Kentucky, and they are licensed to adjust claims in Kentucky, subjecting them to bad faith claims.

64. Defendant Scott Michel is an insurance adjuster licensed by the Kentucky Department of Insurance to adjust property and casualty claims and Defendant Michel has filed paperwork as an insurance "agent" conducting business in Kentucky.

65. Defendant Sedgwick Claims Management Services, Inc. is an insurance adjusting company licensed by the Kentucky Department of Insurance to adjust property and

8

casualty claims and it has filed paperwork as an insurance "agent" conducting business in Kentucky.

66. Defendant Ace American Insurance Company provided excess insurance coverage for Kroger Limited Partnership I above its self-insured retention of $3,000,000.00.

67. Plaintiff made claims for damages far in excess of the $3 million threshold which required Defendant Ace American to be notified of and to properly adjust Plaintiff's claim.

68. Plaintiff alleged at least $13,281,866.86 in damages.

69. Defendant Ace American failed to properly adjust the excess claims.

70. Upon information and belief, Defendant Sedgwick, Defendant Ace American, and Defendant Michel were together in charge of controlling the terms of its insured's pre-trial strategy and dictating the timing and amount of their eventual settlement offers and evaluations for amounts within and exceeding the underlying insurance amount and also amounts within and exceeding the excess insurance amount.

71. Rob Quast, Director of Insurance & Claims for The Kroger Co., the General Partner of Kroger Limited Partnership I, has conceded that Defendant Sedgwick manages liability claims for Kroger.

72. Rob Quast, Director of Insurance & Claims for The Kroger Co., the General Partner of Kroger Limited Partnership I, has conceded that Defendant Michel was a claims examiner regarding Plaintiff's claim and underlying lawsuit against Kroger and select employees.

73. Rob Quast, Director of Insurance & Claims for The Kroger Co., the General Partner of Kroger Limited Partnership I, has claimed that despite Plaintiff's substantial claim, that Defendant Ace American never even reviewed, managed, or adjusted Plaintiff's claim.

74. Kroger and its new counsel which entered the case in 2020 for Plaintiff's underlying claim in Fayette Circuit Court filed an objection to Plaintiff's motion to amend her complaint to add bad faith and related claims against Defendant Sedgwick, Defendant Ace American, and Defendant Michel despite not having standing to do so and having a conflict of interest.

75. On July 30, 2020, Plaintiff reached a confidential settlement of her underlying claims against Kroger at mediation.

76. Plaintiff received no other offer to settle from the date of Defendants' offer on May 20, 2015 consisting of $6,350 and a $500 Kroger gift card until July 30, 2020 despite overwhelming evidence of liability and Plaintiff's significant injuries.

## CLAIMS FOR RELIEF

## I. NEGLIGENCE

77. The Plaintiff restates and incorporates by reference the allegations in every paragraph heretofore stated as if fully set out herein.

78. Defendant Sedgwick, Defendant Ace American, and Defendant Michel have been negligent in in their actions and/or inactions.

79. As a result of the negligence of Defendant Sedgwick, Defendant Ace American, and Defendant Michel, Plaintiff has suffered severe permanent injuries and damages including, but not limited to, medical expenses, bodily injury, physical impairment, physical and mental pain and suffering, inconvenience, disfigurement, disability, loss of

income due to an inability to work, and impairment of ability to earn money ("Injuries and Damages").

80. As a direct result of Defendants' negligence, the Plaintiff is entitled to recover from Defendants all damages sustained by the Plaintiff.

## II. FAILURE TO FOLLOW POLICIES AND PROCEDURES

81. The Plaintiff restates and incorporates by reference the allegations in every paragraph heretofore stated as if fully set out herein.

82. Defendant Sedgwick, Defendant Ace American, and Defendant Michel failed to follow their policies and procedures.

83. As a result of Defendant Sedgwick, Defendant Ace American, and Defendant Michel failure to follow their policies and procedures, Defendants have caused Plaintiff to suffer Injuries and Damages.

84. As a direct result of Defendants' failure to follow their policies and procedures, the Plaintiff is entitled to recover from Defendants all damages sustained by the Plaintiff.

## III. FAILURE TO HIRE, TRAIN, RETAIN, AND SUPERVISE

85. The Plaintiff restates and incorporates by reference the allegations in every paragraph heretofore stated as if fully set out herein.

86. Defendants have failed to properly hire, train, retain, and supervise Defendant Michel and/or any other agent or adjuster tasked with handling Plaintiff's claim and making a reasonable offer of settlement.

87. As a result of Defendant Sedgwick, Defendant Ace American, and Defendant Michel's failure to properly hire, train, retain, and supervise, Defendants have caused Plaintiff to suffer Injuries and Damages.

88. As a direct result of Defendants' failure to properly hire, train, retain, and supervise, the Plaintiff is entitled to recover from Defendants all damages sustained by the Plaintiff.

### IV. GROSS NEGLIGENCE/RECKLESSNESS

89. The Plaintiff restates and incorporates by reference the allegations in every paragraph heretofore stated as if fully set out herein.

90. Defendant Sedgwick, Defendant Ace American, and Defendant Michel have been grossly negligent/reckless in their actions and/or inactions.

91. As a result of the gross negligence/recklessness of Defendant Sedgwick, Defendant Ace American, and Defendant Michel, Defendants have caused Plaintiff to suffer Injuries and Damages.

92. As a direct result of Defendants' gross negligence/recklessness, the Plaintiff is entitled to recover from Defendants punitive damages in an amount sufficient to punish Defendant Sedgwick, Defendant Ace American, and Defendant Michel for their gross negligence/recklessness and to deter them and others from such practices in the future.

### V. BAD FAITH AND VIOLATION OF KENTUCKY UNFAIR SETTLEMENT PRACTICES ACT

93. The Plaintiff restates and incorporates by reference the allegations in every paragraph heretofore stated as if fully set out herein.

94. Defendant Sedgwick, Defendant Ace American, and Defendant Michel have failed to comply with KRS 304.12-230 and KRS 304.12-235, by committing or performing the following acts or omissions contained in KRS 304.12-230:

    a) Subsection (1): Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

b) Subsection (2): Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

c) Subsection (3): Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

d) Subsection (4): Refusing to pay claims without conducting a reasonable investigation based upon all available information;

e) Subsection (5): Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

f) Subsection (6): Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

g) Subsection (7): Compelling persons to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such persons;

h) Subsection (14): Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

95. As a result of the actions of Defendant Sedgwick, Defendant Ace American, and Defendant Michel, the Plaintiff is entitled, pursuant to KRS 304.12-230 and KRS 304.12-235, to interest on all amounts due and owing the Plaintiff at the rate of twelve percent (12%) per annum from and after the expiration of thirty (30) days from the date upon which notice and proof of claim were furnished to Defendant Sedgwick, Defendant Ace American, and Defendant Michel.

96. As a result of the actions of Defendant Sedgwick, Defendant Ace American, and Defendant Michel, the Plaintiff is entitled to punitive damages pursuant to KRS 304.12-230 and KRS 304.12-235, and for bad faith, negligence and/or gross negligence/recklessness, in an amount sufficient to punish Defendant Sedgwick, Defendant Ace American, and Defendant Michel for their use of unfair claims settlement practices and to deter them and others from such practices in the future.

97. As a result of the actions of Defendant Sedgwick, Defendant Ace American, and Defendant Michel, the Plaintiff is entitled to attorneys' fees and costs against Defendant Sedgwick, Defendant Ace American, and Defendant Michel pursuant to KRS 304.12-230 and KRS 304.12-235.

98. As a direct result of Defendants' bad faith and violation of the Kentucky Unfair Settlement Practices Act, the Plaintiff is entitled to recover from Defendants all damages sustained by the Plaintiff.

## VI. JOINT VENTURE OR ENTERPRISE

99. The Plaintiff restates and incorporates by reference the allegations in every paragraph heretofore stated as if fully set out herein.

100. At all times relevant hereto, Defendant Sedgwick, Defendant Ace American, and Defendant Michel, knew or should have known the conduct each was engaged in and they were engaged in a joint venture or enterprise.

101. Defendants agreed to carry out a common purpose for which they received compensation as a result of the actions and/or inactions giving rise to this case.

102. As a result of the joint venture or enterprise of Defendant Sedgwick, Defendant Ace American, and Defendant Michel, all Defendants are jointly and severally liable for the

actions and/or inactions of each Defendant and the Plaintiff is entitled to recover from each Defendant all damages sustained by the Plaintiff.

## PRAYER FOR RELIEF AND JURY DEMAND

**WHEREFORE**, the Plaintiff, by counsel, prays for the following relief against the Defendants, jointly and severally:

A. Judgment in an amount that will fairly and adequately compensate the Plaintiff in excess of the minimum jurisdictional limits of this Court for all damages alleged herein in an amount to be determined by a jury, together with pre-judgment and post-judgment interest at the legal rate until paid;

B. Judgment awarding punitive damages, in an amount to be determined by a jury, together with pre-judgment and post-judgment interest at the legal rate until paid, all in an amount exceeding the jurisdictional minimum of this Court;

C. Judgment awarding the Plaintiff costs and expenses reasonably incurred pursuant to KRS 304.12-230 and KRS 304.12-235 and all applicable law, together with pre-judgment and post-judgment interest at the legal rate until paid;

D. Judgment awarding the Plaintiff her attorney's fees incurred in this action pursuant to KRS 304.12-230 and KRS 304.12-235 and all applicable law, together with pre-judgment and post-judgment interest at the legal rate until paid;

E. Trial by jury; and

F. Any and all other relief to which the Plaintiff may be entitled.

Respectfully submitted,

/s/ D. Todd Varellas
Sandra M. Varellas
D. Todd Varellas
VARELLAS & VARELLAS

                249 West Short Street, Suite 201
                Lexington, Kentucky  40507
                (859) 252-4473
                (859) 252-4476 (fax)
                svarellas@varellaslaw.com
                tvarellas@varellaslaw.com
                legalasst@varellaslaw.com
                *COUNSEL FOR PLAINTIFF*