UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| SUSAN KELCH-DYSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 21-008-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| SEDGWICK CLAIMS MANAGEMENT | ) | **MEMORANDUM OPINION** |
| SERVICES, INC., ACE AMERICAN | ) | **AND ORDER** |
| INSURANCE COMPANY, and SCOTT | ) | |
| MICHEL, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This is a case of déjà vu all over again—at least for the parties involved in this matter. Plaintiff Susan Kelch-Dyson asserts various claims against an insurance claims administrator, a claims adjuster, and an excess insurance provider. Previously, she attempted to bring these same claims in a related state-court action, but the state court did not allow it, concluding that Kelch-Dyson had waited too long to amend her Complaint and that the proposed amendments would be futile, at least in part. The defendants have filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Record No. 16]

Although the plaintiff's suit is not barred by res judicata, her claims for bad faith and violations of Kentucky's Unfair Claims Settlement Practices Act are barred by the doctrine of issue preclusion. Her remaining claims fail to state a claim upon which relief may be granted.

Accordingly, the defendants' motion will be granted and the Complaint will be dismissed in its entirety.[1]

## I. Background

Plaintiff Susan Kelch-Dyson fell while shopping at a Kroger grocery store in Lexington, Kentucky on August 24, 2014. [Record No. 7, ¶ 12] She sued Kroger in the Fayette County Circuit Court on May 29, 2015, alleging that she had sustained extensive injuries due to the store's negligence.[2] Kroger is self-insured up to $3,000,000. *Id.* ¶ 66. Defendant Sedgwick Claims Management Services, Inc. ("Sedgwick") is an independent company that administers claims for Kroger. Ace American Insurance Company ("Ace") provides excess insurance coverage for Kroger above its self-insured retention of $3,000,000. *Id.* According to Kelch-Dyson, Defendant Scott Michel ("Michel") is an insurance adjuster for both Sedgwick and Ace. *Id.* ¶ 7.

Kelch-Dyson's fall was recorded on a Kroger surveillance video. *Id.* ¶ 14. She contends that, despite "clear video evidence identifying the employees in the area where [the plaintiff] fell," the "[d]efendants caused significant undue delay by intentionally delaying the disclosure of [their] identities." *Id.* ¶ 23. Kelch-Dyson further contends that the defendants refused to offer any sum of "MedPay" or similar insurance toward her medical expenses. *Id.* ¶ 28. As a result, Kelch-Dyson contends that she was unable to have the rotator cuff surgery she needed and was forced to continue suffering as a result of the delay. *Id.* ¶ 29.

---

[1] The plaintiff was permitted to file an Amended Complaint on January 15, 2021, to correct deficient jurisdictional allegations. [Record No. 7] This is the operative pleading and will be referred to as the "Complaint."

[2] On July 6, 2015, the Fayette Circuit Court permitted Kelch-Dyson to file an Amended Complaint adding store manager Sasa Cibula as a defendant. [Record No. 16-3, p. 2]

On May 20, 2015, the defendants offered to settle the case for $6,350 and a $500 Kroger gift card.³ *Id*. ¶ 30. Kelch-Dyson filed suit against Kroger nine days later. On June 3, 2015, Michel called her to advise that he was handling her claim and to inquire whether a resolution was possible prior to Kroger responding to the lawsuit. *Id.* ¶ 39. Michel stated that the "claims file notes did not even state that Plaintiff had sustained anything more than soft tissue injuries." According to Kelch-Dyson, Sedgwick "chose to ignore all records demonstrating significant injury" and Michel "refused to review the details of the file." *Id.* ¶ 42.

In July 2015, counsel for Kroger stated that "he would not negotiate at all in the case" and, "if any offer were made, it would come from other individuals involved in the claims process." *Id.* ¶ 43. Kelch-Dyson believed him to be referring to the defendants. Approximately three years later, Kelch-Dyson made a written settlement demand of $900,000, to which the defendants did not respond. In February 2019, she supplemented her answer to an interrogatory advising Kroger she would seek over 13 million dollars at trial. [Record No. 23, p. 3]

On March 24, 2020, Kelch-Dyson filed a motion for leave to file a second amended complaint.⁴ She sought to assert additional claims against the existing defendants and add Sedgwick, Ace, and Michel to the lawsuit. [Record No. 16-2] The state court denied the

---

³ Kelch-Dyson alleges that her past medical expenses are approximately $300,000 and her future medical expenses are approximately $80,000. *Id.* ¶¶ 31-32.

⁴ The plaintiff does not provide this background information in her Complaint. However, the Court may consider public records, such as state court filings, without converting the defendants' motion to dismiss to a motion for summary judgment. *See, e.g., Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)).

motion on June 22, 2020. [Record No. 16-3] It concluded that the motion to amend, filed just seven months prior to trial, was untimely. Further, the court concluded that Kelch-Dyson had failed to state a claim against Sedgwick, Ace, or Michel for bad faith or violations of the Unfair Claims Settlement Practices Act ("UCSPA"), making amendment futile with respect to these claims.[5]

Kelch-Dyson entered into a confidential settlement agreement with Kroger on September 14, 2020.[6] She then filed suit in this Court, asserting the previously-asserted claims against Sedgwick, Ace, and Michel. Specifically, she contends that the defendants were negligent, grossly negligent, and/or reckless; failed to follow unspecified policies and procedures; failed to properly hire, train, retain, and supervise; acted in bad faith in violation of Kentucky's UCSPA; and "joint venture or enterprise." [Record No. 7]

The defendants have filed a motion to dismiss, arguing that the Complaint should be dismissed on either of two alternate grounds. First, they contend that it should be dismissed based on res judicata principles because the state court denied the plaintiff's motion to amend her complaint to bring the same claims against these defendants. Second, they argue that Kelch-Dyson's claims should be dismissed pursuant to Rule 12(b)(6) because she does not state viable claims under Kentucky law.

---

[5] Kelch-Dyson filed a separate lawsuit alleging the same claims in Fayette Circuit Court five weeks later. However, she voluntarily dismissed the suit after reaching the settlement with Kroger. [Record No. 16, p. 2 n.5]

[6] The Settlement Agreement has been filed under seal at Record No. 20.

## II. Standard of Review

The defendants move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion tests the sufficiency of the complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion under Rule 12(b)(6), the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." The Court primarily considers the allegations in the complaint, but also may consider matters of public record, orders, items appearing in the record, and exhibits attached to the complaint. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

A defendant may raise the affirmative defense of res judicata in a motion to dismiss under Rule 12(b)(6). *BellSouth Telecomms., Inc. v. Ky. Pub. Serv. Com'n*, 2008 WL 5173334, at *6 (E.D. Ky. Dec. 10, 2008) (citing *Westwood Chem. Co., Inc. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981)). However, the propriety of such a motion is predicated upon the complaint showing on its face that the affirmative defense applies. *Id.* (citing 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2008)). When considering a motion to dismiss, the Court may take "judicial notice of another court's opinion not for the truth of the facts recited therein, but for the existence of the opinion." *Id.* (quoting *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008). Considering such opinions and other public records does not convert the motion to dismiss to a motion for summary judgment. *Id.*

### III. Discussion

#### A. Res Judicata

Res judicata is an affirmative defense that operates to bar repetitious lawsuits involving the same cause of action. *Ky. Retirement Sys. v. Carson*, 495 S.W.3d 135, 139 (Ky. 2016) (quoting *Yeoman v. Com., Health Policy Bd.*, 983 S.W.2d 459, 464-65 (Ky. 1998)). This Court applies state res judicata law to determine the preclusive effect of a state court's decision. *See, e.g., Doe ex rel Doe v. Jackson Local Schools Sch. Dist.*, 422 F. App'x 497, 500 (6th Cir. 2011). Kentucky law provides that

> where a question or a fact is once litigated and determined by the judgment of a court of competent jurisdiction[,] no fact or question that was litigated, or could have been litigated therein, can thereafter be relitigated by the same parties or their privies.

*Hopkins v. Jones*, 235 S.W. 754, 756 (Ky. 1921). Res judicata, or claim preclusion, "bars a party from relitigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action." *Yeoman*, 983 S.W.2d at 465.

For further litigation to be barred by claim preclusion, three elements must be present: identity of the parties; identity of the causes of action; and resolution on the merits. *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 371 (2010). This doctrine is closely related to the rule against splitting causes of action, which limits all causes of action arising out of a single transaction to a single procedure. *Id.* "It rests upon the concept that 'parties are required to bring forward their whole case' and may not try it piecemeal." *Id.* (quoting *Arnold v. K-Mart Corp.*, 747 S.W.2d 130, 132 (Ky. Ct. App. 1988)).

The defendants concede that this case is "procedurally unusual" but maintain that res judicata applies. [Record No. 26, p. 3] First, they contend that identity of the parties exists

because "[t]he Second Amended Complaint that Plaintiff *sought to file* in Fayette Circuit Court alleged claims against Sedgwick, Michael, and Ace." [Record No. 16, p. 7 (emphasis added)] However, res judicata requires identity of the *parties* or their privies. *BTC Leasing, Inc. v. Martin*, 685 S.W.2d 191, 197-98 (Ky. Ct. App. 1984) (emphasis added). The defendants fail to acknowledge that the defendants were never actually parties to the state court action, nor have they identified a single case in which identity of parties was found to exist under similar facts.

In considering whether the lawsuits concern the same controversy, "the key inquiry . . . is whether they both arise from the same transactional nucleus of facts." *Coomer*, 319 S.W.3d at 371. The defendants contend they do—again focusing on the Second Amended Complaint that the plaintiff was not permitted to file. The plaintiff, on the other hand, perhaps unartfully, asserts: "[T]he state court case involved Kroger and claims against it, and this case involves the insurance Defendants and claims against it [sic], not Kroger." [Record No. 23, p. 10]

Kentucky follows the transactional approach, which requires the Court to "compare the factual issues explored in the first action with the factual issues to be resolved in the second." *Lawrence v. Bingham Greenebaum Doll, L.L.P.*, 599 S.W.3d 813, 826 (Ky. 2019). The question is not "whether the two claims are related to or may materially impact one another." *Id.* Instead, the Court examines the "identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Hashemian v. Louisville Reg. Airport Auth.*, 498 S.W.3d 843, 846 (Ky. Ct. App. 2016) (internal quotation marks and citation omitted). While the plaintiff asserts that Kroger was responsible for her fall due to its employees' negligence and liquid on the floor, she alleges that the defendants here are liable for distinct conduct

involving the review of her claims against Kroger. While the facts may overlap, the claims differ enough that identity of the causes of action has not been established.

Finally, the defendants also have not established that the state court's denial of Kelch-Dyson's motion for leave to amend constitutes a decision on the merits for purposes of res judicata. While there is no Kentucky case directly on point, the defendants identify non-binding decisions in support of their position that the ruling is a decision on the merits. For example, in the United States Court of Appeals for the Eighth Circuit, "[i]t is well settled that denial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading." *King v. Hoover Grp., Inc.*, 958 F.2d 219, 222-23 (8th Cir. 1992). This is true even when the denial was based on reasons other than the merits, such as timeliness or prejudice to the opposing party. *Professional Mgmt. Assoc. v. KPMG LLP*, 345 F.3d 1030, 1032-33 (8th Cir. 2003). *See also Arrigo v. Link Stop, Inc.*, 836 F.3d 787 (7th Cir. 2016) (concluding that denial of motion to amend constitutes a decision on the merits); *Christman v. Saint Lucie Cty., Fla.*, 509 F. App'x 878, 879 (11th Cir. 2013) (same); *Hatch v. Trail King Indus., Inc.*, 699 F.3d 38, 45-46 (1st Cir. 2012) (same).

The plaintiff notes that each of these cases involves the denial of a motion to amend to add additional claims—not to add new parties. While the plaintiff does not explain the significance of this distinction, and the defendants claim there is none, the opinion in *Northern Assurance Company of America v. Square D Company*, 201 F.3d 84 (2d Cir. 2000), helps illustrate why it is important. That case arose out of a fire at the home of the Morrells, who recovered from their insurer, Northern. After investigating the circumstances surrounding the fire, Northern believed that the electric company, New York State Electric & Gas ("NYSEG"), was at fault. As subrogee of the Morrells, Northern sued NYSEG alleging negligence, strict

liability, and breach of warranty claims. NYSEG responded by adding Square D, the manufacturer of the home's circuit breaker, as a third-party defendant.

Several months later, and after the deadline for joining parties had expired, Northern came to believe that it had viable claims against Square D. It petitioned the court for leave to amend its complaint to add the claims against Square D. The magistrate judge denied the motion without considering the merits of the claims, observing that the motion was untimely and that Northern had failed to explain the delay. Northern did not seek reconsideration or appeal the magistrate judge's decision. Instead, it filed a separate lawsuit against Square D, alleging the same claims it had attempted to add in the previous lawsuit. The district court granted Square D's motion to dismiss based on res judicata.

The Court of Appeals reversed, stating that "[w]hile denial of leave to amend a complaint may have a preclusive effect in some cases, claim preclusion is unavailable because the claims sought to be added to the first suit were against an independent party and were not required to be brought in that suit." *Id.* at 87. It explained:

> Where the plaintiff is seeking to add additional claims against the same defendant and leave to amend is denied, claim preclusion is appropriate. When claim preclusion is applied in these cases, it is not the actual decision to deny leave to amend that forms the basis of the bar. . . . Instead, the bar is based on the requirement that the plaintiff must bring all claims at once against the same defendant relating to the same transaction or event.

*Id.* at 88.

Like the plaintiff in *Northern*, Kelch-Dyson was not *required* to bring her claims against Sedgwick, Ace, and Michel in the underlying action because they are independent claims. As a general matter, the decision belongs to the plaintiff of whether to join two or more defendants in a lawsuit or to bring separate lawsuits. *See* Ky. R. Civ. P. 20.01

(Permissive Joinder). Unlike the typical res judicata-case involving claims that *should* have been brought in the first lawsuit, the defendants have not identified any reason that Kelch-Dyson was required to bring her claims against them earlier.

### B. Issue Preclusion

The parties recognize that issue preclusion also can operate as a bar to further litigation on previously-asserted claims. To successfully raise this defense, the defendants must establish the following: the issue in the second case must be the same as the issue in the first case; the issue must have been actually litigated in the first case; the issue must have been actually decided in the first case; and the issue in the prior action must have been necessary to the court's judgment. *Yeoman*, 983 S.W.2d at 465. Unlike res judicata, issue preclusion allows a non-party to the earlier litigation to use an earlier judgment to preclude relitigation of matters litigated in the original action. *Miller v. Administrative Office of Courts*, 361 S.W.3d 867, 871 (Ky. 2011).

The defendants have demonstrated that the plaintiff's bad faith/UCSPA claims are barred based on issue preclusion.[7] Kelch-Dyson raised the same issues by virtue of her proposed second amended complaint in state court. The issues were actually litigated, as the parties submitted briefs and participated in oral argument prior to the court's decision. The issue was actually decided, as evidenced by the court's written decision. And finally, it is clear that the court's decision on the merits was essential to its ruling. [*See* Record No. 16-3, p. 4 (explaining that the court considers timeliness *and* whether the proposed amendment would be futile).] Accordingly, these claims will be dismissed.

---

[7] These claims would be dismissed under Rule 12(b)(6) regardless for the reasons stated by the Fayette Circuit Court. [*See* Record No. 16-3]

### C. Kelch-Dyson's Remaining Claims

The plaintiff's remaining claims are for negligence, gross negligence/recklessness, "failure to follow policies and procedures," "failure to hire, train, retain, and supervise," and "joint venture/enterprise." The defendants contend they should be dismissed under Rule 12(b)(6).

As an initial matter, the Court notes that the plaintiff fails to flesh out her individual claims by tying them to specific facts that allege wrongdoing by the defendants. Instead, she "restates and incorporates by reference the allegations in every paragraph" of her 76-paragraph factual background, leaving the defendants and the Court to guess about the particulars of her claims. This is insufficient as it does not constitute a "short and plain statement showing that the pleader is entitled to relief." *See, e.g, Briscoe v. Fine*, 444 F.3d 478, 498-99 (6th Cir. 2006); Fed. R. Civ. P. 8(a)(2). *See also Twombly*, 550 U.S. at 555 (observing that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (cleaned up).

### 1. Negligence, Gross Negligence, and Recklessness

To prevail on a negligence claim, the plaintiff must establish that the defendant owed her a duty; that the defendant breached the duty; and that she was harmed as a result of the breach. *Mullins v. Commonwealth Life Ins.*, 839 S.W.2d 245, 247 (Ky. 1992). The absence of proof on any one of these elements is fatal to the claim. *Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538, 542 (Ky. Ct. App. 2013). The plaintiff makes a conclusory allegation that the defendants were negligent in their handling of her claim against Kroger, but she does not allege that they owed a duty to her to administer her claim in any particular way.

Despite their alleged involvement in the administration of Kroger's self-insurance plan, Sedgwick and Michel had no contractual obligation to pay Kelch-Dyson. Further, the Complaint is devoid of factual allegations suggesting Ace was required to pay her anything.[8] It is well-established that "obligations of a contract are limited to the parties thereto and cannot be imposed on a stranger to the contract." *Raney v. Life Ins. Co. of N.A.*, 2008 WL 11344701, at *2 (E.D. Ky. July 3, 2008) (quoting *Kovacs v. Freeman*, 957 S.W.2d 251, 256 (Ky. 1997)); *Eldridge v. Shelby Cnty., Tenn.*, 2020 WL 1962988, at 11 (W.D. Tenn. Apr. 23, 2020) (applying Tennessee law).

The plaintiff does not respond to the defendants' argument that they owed her no duty. Instead, she requests leave to file a second amended complaint "[i]n the event the Court finds" her Amended Complaint deficient. [Record No. 23, p. 19] However, she did not tender a proposed amended complaint or indicate what amendments she might make. The plaintiff has had numerous opportunities to amend her complaint in both state court and this Court; she has not demonstrated that additional amendment is warranted. Because the plaintiff's claim for simple negligence fails, her claims for gross negligence and recklessness necessarily fail, as well. *See Gaither v. Beam Partners, LLC*, 2017 WL 1217166, *6 (E.D. Ky. Mar. 31, 2017) (comparing scienter required for negligence and gross negligence).

**2.    Failure to Follow Policies and Procedures/Failure to Hire, Train, Retain, and Supervise**

Kelch-Dyson claims that Sedgwick, Ace, and Michel "failed to follow their policies and procedures." [Record No. 7, ¶ 82] However, Kentucky does not appear to recognize a

---

[8]    Kelch-Dyson's claims against Ace are particularly puzzling since she acknowledges that her settlement demand was $900,000, and Ace only covered claims exceeding $3,000,000. [Record No. 7, ¶¶ 45, 66; *See also* Record No. 20.]

cause of action for "failure to follow policies and procedures." Regardless, the plaintiff does not identify any policies or procedures that the defendants have failed to follow.

Kelch-Dyson also alleges that "Defendants have failed to properly hire, train, retain, and supervise Defendant Michel and/or any other agent or adjuster tasked with handling Plaintiff's claim and making a reasonable offer of settlement." *Id.* at ¶ 86. With respect to her claims of "failure to hire, train, retain, and supervise," the plaintiff does not indicate the defendants' alleged level of culpability. However, Kentucky does recognize the torts of negligent hiring, training, supervision, and retention. *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 336 n.10 (Ky. 2014).

Liability under these theories only exists if the requirements of a negligence action exist. *Cummins v. City of Augusta*, 2013 WL 5436657, at *4 (Ky. Ct. App. Sept. 27, 2013) (citing Restatement (Second) of Agency § 213 cmt. a. (1958)). As previously explained, Kelch-Dyson does not allege that the defendants owed her a duty of care. She has not sufficiently alleged the remaining elements either. The elements of negligent hiring and retention are: (1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff. *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 733 (Ky. 2009). To prove a claim of negligent supervision or training, the plaintiff must show that the employer knew or should have known of the risk that the employee's employment created. *Smith v. Norton Hosps., Inc.*, 488 S.W.3d 23, 32 (Ky. Ct. App. 2016).

Kelch-Dyson does not allege facts indicating that Michel or any other claims adjusters were unfit or insufficiently trained to perform their jobs. The conclusory allegations that

Michel "ignore[d]" her medical records and characterized her harm as "soft tissue injuries," are insufficient to establish that he was unfit to perform his job as a claims adjuster. While Kelch-Dyson may be dissatisfied with the time it took to resolve her claims against Kroger, she has not stated a claim against these defendants based on the alleged delay.

### 3. Joint Venture/Enterprise

Joint venture/enterprise is not a cause of action upon which relief can be granted and this claim will be dismissed. *See Roethke v. Sanger*, 68 S.W.3d 353 (Ky. 2001) (defining joint enterprise).

### 4. Damages

On a final note, the Court observes that the plaintiff seeks damages for "medical expenses, bodily injury, physical impairment, physical and mental pain and suffering, inconvenience, disfigurement, disability, loss of income due to inability to work, and impairment of ability to earn money." [Record No. 7, ¶ 79] While Kelch-Dyson may have experienced frustration and inconvenience associated with the claims-administration process, she has not alleged any actions on the part of these defendants that could have resulted in bodily injury, disfigurement, or the like.

### IV. Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The defendants' motion to dismiss [Record No. 16] is **GRANTED**.

2. This matter is **DISMISSED** and **STRICKEN** from the Court's docket.

- 15 -

Dated: April 12, 2021.

*Danny C. Reeves, Chief Judge*
United States District Court
Eastern District of Kentucky